**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**LEWIS T. BABCOCK, JUDGE**

Civil Case No.  08-cv-01229-LTB

LORENZO P. TORRES,

            Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

            Defendant.

_____

**ORDER**
_____

        Plaintiff, Lorenzo P. Torres, appeals the final decision of Michael J. Astrue,

Commissioner of Social Security, denying his application for Social Security Disability benefits.

Following an August 9, 2006, hearing, the Administrative Law Judge ("ALJ") issued an

unfavorable decision on November 13, 2006.  The Appeals Council determined there was no

basis for changing the ALJ's decision, thus making it the Commissioner's final decision.

Plaintiff has exhausted his administrative remedies and this case is ripe for judicial review.

Jurisdiction is proper under 42 U.S.C. § 405(g).  Oral argument would not materially assist the

determination of this appeal.  After consideration of the parties' briefs and the administrative

record, and for the reasons set forth below, I AFFIRM.

**I.  BACKGROUND**

        Plaintiff was born on August 19, 1967, and was thirty-eight years of age at the time of the

hearing.  [Administrative Record "AR" 57].  He has completed three years of college.  [AR 76].

His past work history includes employment as a construction worker, oil rig floor worker, and a

security guard.  [AR 507].  As relevant to Plaintiff's appeal, Plaintiff claims he is disabled

because of panic and anxiety disorders and depression.  Plaintiff's alleged onset date is April 1,

2003, the last date he worked.  [AR 466].

### A.  Plaintiff's Medical History

Plaintiff reports a history of psychiatric problems beginning as early as 1991.  [AR 267].

Plaintiff has also received treatment for deep venous thrombosis, reflux disease, obesity, and

knee and back problems related to on-the-job injuries.  [AR 267, 275–81, 283].  In connection

with Plaintiff's work-related injuries, he was examined by Dr. Gutterman on April 20, 2004.

[AR 314–23].  After conducting a three hour interview with Plaintiff, Dr. Gutterman determined

Plaintiff did not appear depressed and did not report depressive symptoms.  [AR 321].  Plaintiff

did report some symptoms of anxiety, although Dr. Gutterman did not observe any anxious

behaviors.  [AR 321].  Dr. Gutterman concluded that—while Plaintiff likely experienced anxiety

and depression as the result of his work-related injury—these symptoms had significantly abated

by the time of Dr. Gutterman's examination.  [AR 321].  Dr. Gutterman opined that Plaintiff was

fully capable of returning to work and further opined that employment would be therapeutic.

[AR 322].

In connection with Plaintiff's application for SSDI benefits, he was evaluated by Drs.

Boehle and Cucchi.  [AR 267–81].  Dr. Boehle performed a physical examination on April 3,

2003, and determined Plaintiff was able to perform regular, unrestricted work activities as long

as he continued to be monitored by his primary care physician for thrombosis-related blood

clots.  [AR 279–80].  Dr. Cucchi performed a psychiatric diagnosis and determined Plaintiff

suffered from major depressive disorder and panic disorder.  [AR 267–70].  Dr. Cucchi assessed

Plaintiff's level of functioning as a 50 on the Global Assessment of Functioning ("GAF") scale. [AR 270]. Dr. Cucchi's report was later reviewed by a state agency psychiatrist, Dr. Ayde, who determined Plaintiff suffered from affective and anxiety disorders and chronic mild-to-moderate depression, but his impairment was not severe. [AR 104, 107, 109].

In October 2003, Plaintiff began mental health treatment at West Central Mental Health Clinic ("WCMHC") on referral from his primary care physician, Dr. Buchanon-Penrose. [AR 429]. He was diagnosed with major depression and assessed a GAF score of 45. [AR 429]. Dr. Thurston-Hicks assessed a GAF score of 48 on March 14, 2005, and also diagnosed Plaintiff with alcohol abuse on this date. [AR 393]. WCMHC physicians noted Plaintiff's depression and alcohol abuse were ongoing through April 2006. [AR 388–430].

On April 26, 2005, Plaintiff told Dr. Thurston-Hicks that he had reduced his alcohol consumption. [AR 388]. Dr. Thurston-Hicks noted Plaintiff looked relatively improved and stated it was unclear whether Plaintiff had ongoing mild psychotic features to his depression. [AR 388]. Dr. Thurston-Hicks continued Plaintiff's medications and recommended continued therapy and anger management. [AR 388].

On May 31, 2005, Dr. Thurston-Hicks completed a Mental Impairment Questionnaire outlining the functional impacts of Mr. Torres's mental impairments. [AR 395–400]. Dr. Thurston-Hicks noted Plaintiff's depression and anxiety disorder and assessed a GAF score of 48 on that date. [AR 397]. Although Dr. Thurston-Hicks checked the box labeled "seriously limited, but not precluded" on nine of the sixteen "mental abilities and aptitudes needed to do unskilled work," Dr. Thurston-Hicks noted Plaintiff was able to work adequately at his current part-time job and that his mental impairments were more impactful in personal interactions than

in work settings.  [AR 397–98].  Dr. Thurston-Hicks opined Plaintiff would be absent from work about two days per month due to his mental impairments.  [AR 399].  Dr. Thurston-Hicks also noted Plaintiff's history of alcohol abuse, described it as in early remission, and opined that Plaintiff's mental impairments would remain if Plaintiff stopped using alcohol.  [AR 400].

On January 31, 2006, Plaintiff told Dr. Thurston-Hicks he was drinking five or six beers per night with dinner.  [AR 415].  On April 25, 2006, Plaintiff told Dr. Thurston-Hicks he had been drinking more than usual and had recently drank until he blacked out.  [AR 411].  On May 26, 2006, Dr. Thurston-Hicks noted Plaintiff had greatly decreased his alcohol consumption and that Plaintiff's mental condition appeared somewhat improved.  [AR 443].  Dr. Thurston-Hicks attributed the bulk of this improvement to Plaintiff's decreased alcohol intake.  [AR 443].

<u>B.  Disability Hearing</u>

At Plaintiff's hearing on August 9, 2006, Plaintiff testified he: lived with his wife and three children; had three years of college education and was currently attending college in pursuit of a business administration degree; had dropped out of some classes because of an arrest; missed about one out of every four classes because of depression; had worked only two days during his period of alleged disability; was looking for work as a heavy equipment operator; was proficient in using a computer; was having trouble finding work because employers thought his physical problems—including his leg and back injuries and thrombosis—made him a liability; did not take pain medication; took Welbutrin for depression; could walk for 30 to 45 minutes; could sit continuously for 30 minutes to an hour and for up to three hours in an eight hour day; could stand for 30 minutes to an hour; had trouble climbing stairs, kneeling, stooping, and bending over; could lift 50 pounds; had trouble sleeping; was able

4

to groom himself, cook, clean his home, and go shopping with his wife; and attended church and Bible study regularly.  [AR 472–504].  Plaintiff testified he drank alcohol when he visited his brother, drank lots of alcohol on holidays, drank about one case of beer and two bottles of hard alcohol per month, drank alcohol to sleep at night, became intoxicated about twice per month, and that he didn't believe he ever had a problem with alcohol.  [AR 472–74].

The ALJ then questioned a vocational expert ("VE") regarding Plaintiff's past relevant work.  The ALJ first asked whether a hypothetical person with an age, education, and work history similar to Plaintiff's—and who could lift 20 pounds frequently and 50 pounds occasionally; could sit for 45 minutes at a time and for six hours in an eight hour day; could stand for one hour per day; could walk for 30 to 45 minutes at a time and for one hour per day; was limited to only occasional use of the right foot; could occasionally balance, stoop, and climb stairs and ramps; could not couch, crawl, or climb ladders or scaffolds; could not work in unprotected heights; could occasionally operate machines; could occasionally tolerate humidity and wetness; and could never tolerate dust, odors, fumes, pulmonary irritants, extreme cold, heat, or vibrations—could perform any of Plaintiff's past relevant work.  [AR 508–09].  The VE testified that the hypothetical person could not perform Plaintiff's past relevant work because a person with those limitations could perform only sedentary work.  [AR 509].  The VE testified there were other jobs that a person with such limitations could perform, including dispatcher, assembler, and surveillance system monitor.  [AR 509–10].

The ALJ then asked whether a hypothetical person with the same physical limitations, but with additional mental limitations—including being seriously limited, but not precluded from being able to work competitively, in the areas of remembering work-like procedures,

5

maintaining attention for two-hour segments, sustaining an ordinary routine without special supervision, completing a normal workday/workweek without interruptions, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding to criticism from supervisors, getting along with coworkers, responding appropriately to changes in a routine work setting, dealing with normal work stress, carrying out or understanding detailed instructions, and setting realistic goals; as well as marked limitations in maintaining social functioning, moderate limitations in concentration and persistence of pace for an extended period of time, and who would miss an average of two days a month from work—would be able to perform any work.  [AR 510–11].  The VE testified such a person would be unable to find work.  [AR 511].

The ALJ then asked whether a hypothetical person with Plaintiff's limitations as he described them—who could walk for 30 to 45 minutes at a time; could sit for 30 minutes to an hour at a time and for two to three hours in an eight hour day; could stand for thirty minutes to an hour at a time; was limited in the ability to climb stairs; could lift or carry 50 pounds less than occasionally; could perform light duties such as office work; had moderate to marked limitations on attention and concentration; and could not concentrate on work at a sustained basis for eight hours a day and forty hours a week—would be able to find work.  [AR 511–12].  The VE responded that such a person would be unable to work.  [AR 512].

## C.  ALJ Ruling

In his ruling, the ALJ applied the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520.  Applying the first step, the ALJ determined Plaintiff had not performed substantial gainful activity since his onset date of April 1, 2003.  [AR 19].  Applying the second

step, the ALJ determined Plaintiff had five severe impairments: post-phlebitic syndrome in the

right lower extremity; obesity; a depressive disorder; an anxiety disorder; and alcohol use

disorder.  [AR 19].  The ALJ further determined that Plaintiff's post-phlebitic syndrome, obesity,

and mental disorders would continue to be vocationally relevant even if Plaintiff ceased his

alcohol use.  [AR 20].  Applying the third step, the ALJ determined Plaintiff—with or without

alcohol use—did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  [AR

20–21].

When determining Plaintiff's residual functional capacity ("RFC") at step four, the ALJ

distinguished between Plaintiff's RFC if he continued his alcohol use and Plaintiff's RFC in the

absence of alcohol use.  In the absence of alcohol use, the ALJ determined Plaintiff had the

residual functional capacity to perform semi-skilled work which requires no more than three

months to learn and required Plaintiff to: lift and carry up to 50 pounds occasionally and 20

pounds frequently; walk for 30 to 40 minutes at a time and for no more than one hour in a

normal workday; sit for 45 minutes at a time and for no more than six hours in a normal

workday; stand for one hour in a normal workday; occasionally use the right foot to operate foot

controls; occasionally climb stairs and ramps, balance, stoop, and kneel; occasionally be exposed

to moving parts and machinery; occasionally be required to operate a motor vehicle;

occasionally be exposed to humidity and wetness; and with no climbing ladders or scaffolds; no

crouching or crawling; no requirement to work from unprotected heights; and no exposure to

temperature extremes and vibrations.  [AR 21–22].  With continued alcohol use, the ALJ

determined Plaintiff's mental restrictions would prevent him from performing work in any

7

exertional category.  [AR 22].  The ALJ determined—in light of Plaintiff's significant history of alcohol abuse and documented periods of improved mental state when his alcohol use was reduced—that Plaintiff's allegations concerning the severity of his mental impairments in the absence of alcohol were not credible.  [AR 27–28].  Accordingly, the ALJ concluded that Plaintiff's alcoholism formed the most compelling basis for assigning severe work restrictions.  [AR 28].

In light of Plaintiff's alcohol use, the ALJ determined at step four that Plaintiff was unable to perform past relevant work.  [AR 32].  Even without using alcohol, however, the ALJ found Plaintiff's restriction to one hour of standing and one hour of walking would still prevent Plaintiff from performing past relevant work.  [AR 32].

The ALJ also determined at step five that—in light of Plaintiff's alcohol use—there were no jobs existing in significant numbers in the national economy that Plaintiff could perform.  [AR 32].  If Plaintiff stopped using alcohol, however, the ALJ found Plaintiff could perform the jobs of dispatcher, assembler, or security systems monitor—all of which existed in significant number in the national and Colorado economies.  [AR 33].  Because Plaintiff's alcohol use was determined by the ALJ to be a contributing material factor to the determination of disability at step five—and because Plaintiff would not have been disabled but for the alcohol use—the ALJ determined Plaintiff had not been under a disability as defined in the Social Security Act from April 1, 2003, through the date of the decision on November 13, 2006.  [AR 33].

## II. STANDARD OF REVIEW

My review in a Social Security appeal is limited to whether the final decision is supported by substantial evidence and the correct legal standards.  *Grogan v. Barnhart*, 399 F.3d

1257, 1261 (10th Cir. 2005).  Although I do not reweigh the evidence or try the issues *de novo*, I must examine the record as a whole—including anything that may undercut or detract from the ALJ's findings—in order to determine if the substantiality test has been met.  *Id*. at 1262. Evidence is substantial if it amounts to "more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987).  Evidence is not substantial if it is overwhelmed by other evidence in the record, or constitutes a mere conclusion.  *Grogan*, 399 F.3d at 1261–62. If the ALJ's decision is not supported by substantial evidence, or if the ALJ failed to provide a sufficiently clear basis from which I may determine the appropriate legal standards were applied, I may reverse.  *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994).

### III.  DISCUSSION

Plaintiff raises three issues on appeal: (1) the ALJ's finding that Plaintiff's alcohol use was a material factor in the determination of disability was not supported by substantial evidence; (2) the ALJ's finding that the effect of Plaintiff's alcohol use was separable from the effect of Plaintiff's mental impairments in the absence of alcohol use was not supported by substantial evidence; and (3) the ALJ erred in rejecting an opinion of Plaintiff's treating psychiatrist, Dr. Thurston-Hicks.  Because the issues involve similar questions, I consider them together.

The Social Security Act states that "[a]n individual shall not be considered disabled for purposes of this chapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C).  Accordingly, when an ALJ finds a claimant is disabled and medical

evidence of drug addiction or alcoholism is included in the record, the ALJ must determine whether the disability would remain if the claimant stopped using drugs or alcohol.  *See* 20 C.F.R. § 416.935.  If the ALJ determines the claimant's disabilities would not be disabling absent drug or alcohol abuse, the ALJ must find the drug or alcohol abuse to be a contributing factor material to the determination of disability.  *See id.*  If the effects of a claimant's mental illness cannot be separated from the effects of his substance abuse, however, the substance abuse will be found not to be a contributing factor material to the disability determination.  *See McGoffin v. Barnhart*, 288 F.3d 1248, 1253 (10th Cir. 2002).

Plaintiff's medical record included substantial evidence showing his mental impairments were attributable to his alcohol use.  As noted by the ALJ, Plaintiff's extensive treatment records with Dr. Thurston-Hicks documented Plaintiff drank excessively and had improved mental condition when he reduced his alcohol intake.  [AR 388, 393, 400, 443].  Although Dr. Thurston-Hicks opined on May 31, 2005, that Plaintiff's mental impairments would remain even if Plaintiff stopped using alcohol, the record shows that Plaintiff's alcohol consumption significantly increased after that point with a concomitant increase in Plaintiff's mental impairment.  [AR 411, 413, 415].  Moreover, Dr. Thurston-Hicks noted in her May 31, 2005, opinion that Plaintiff was able to work at that time, that his mental impairments were improving, and that his mental impairments were more applicable in personal interactions than work interactions.  [AR 397–98].  Dr. Thurston-Hicks noted on January 31, 2006, that Plaintiff's increased alcohol consumption had worsened Plaintiff's mental state, and on May 26, 2006, noted that a recent decrease in alcohol consumption had improved Plaintiff's mental state.  [AR 416, 443].  Accordingly, while Dr. Thurston-Hicks's May 31, 2005, opinion—an opinion issued

after treating Plaintiff once every two to five weeks over a period of less than three months [AR 395]—stated Plaintiff's mental impairments would remain even in the absence of alcohol consumption, Plaintiff's medical records document a notable shift in Dr. Thurston-Hicks's opinion over the course of Plaintiff's treatment.  The ALJ properly relied on this shift in opinion when he found Dr. Thurston-Hicks's May 2005 opinion "d[id] not represent the claimant's functioning over time."  [AR 30].

In light of Dr. Thurston-Hicks's later-occurring medical opinions, it was not error for the ALJ to reject Dr. Thurston-Hicks's May 2005 opinion that Plaintiff's mental impairments would remain even if Plaintiff stopped using alcohol.  *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002); *Harris v. Secretary of Health and Human Servs.*, 821 F.2d 541, 544 (10th Cir. 1987).  Excluding Dr. Thurston-Hicks's May 2005 opinion, substantial evidence shows Plaintiff—when he abstained from alcohol consumption—suffered from mild to moderate depressive and anxiety symptoms that would not preclude him from performing the jobs of dispatcher, assembler, or security systems monitor.  [AR 33, 104, 107, 109, 279–80, 321–22, 379–98, 509–10].  The ALJ's finding that Plaintiff's alcoholism was a material factor contributing to his disability, therefore, was supported by substantial evidence and based upon the correct legal standards.  *See* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 416.935.

Because the ALJ's findings were supported by substantial evidence and the correct legal standards, I may neither reweigh the evidence nor substitute my discretion for that of the ALJ. *See Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  Accordingly, I find and conclude the ALJ's ultimate finding—that Plaintiff's alcoholism was a material factor in the determination of disability—was likewise supported by substantial evidence and the correct legal standards.

11

*See Hargis v. Sullivan*, 945 F.2d 1482, 1486 (10th Cir. 1991).  In such circumstances, the ALJ

was required to find Plaintiff was not disabled under the Social Security Act.  *See* 42 U.S.C. §

423(d)(2)(C).

## IV.  CONCLUSION

Review of the ALJ's decision shows that the ALJ applied the correct legal standards and

that his factual findings were supported by substantial evidence.  Accordingly, the ALJ's

November 13, 2006, administrative decision in this matter is AFFIRMED.


Dated: June ___18___, 2009.


                                        BY THE COURT:


                                        ___s/Lewis T. Babcock_____
                                        Lewis T. Babcock, Judge